# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CRIS CHRISTENSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. |
| | ) |
| FREEMAN HEALTH SYSTEM | ) |
| Serve at: | ) |
| Registered Agent | ) |
| Paula Baker | ) |
| 1102 W. 32nd St. | ) |
| Joplin, Missouri, 65804 | ) |
| | ) |
| THERESE MCBRIDE, D.O. | ) |
| Serve at: | ) |
| 316 N. Wall | ) |
| Joplin, MO | ) |
| | ) |
| JAMES PLETCHER, D.O. | ) |
| Serve at: | ) |
| 2480 S. Loma Linda Dr. | ) |
| Loma Linda, MO | ) |
| | ) |
| DEANNA L. MARQUIS | ) |
| Serve at: | ) |
| 437702 East 200 Road | ) |
| Vinita, OK, 74301 | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

**COMES NOW** Plaintiff Cris Christenson, by and through his attorneys of record, Baird Lightner Millsap, P.C. and for his causes of action against Defendants Freeman Health System, Theresa McBride, D.O., James Pletcher, D.O. and Deanna L. Marquis, states and alleges as follows:

1

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Cris Christenson (hereinafter "Plaintiff") is a citizen of the United States of America, and a citizen and resident of Miami County, Kansas.

2. Defendant Freeman Health System (hereinafter "Defendant Hospital") is a Missouri non-profit corporation organized and existing under the laws of the State of Missouri and having its principal place of business in Joplin, Jasper County, Missouri.

3. Defendant Therese McBride, D.O. (hereinafter "Defendant McBride") is a resident and citizen of the State of Missouri. At all relevant times, Defendant McBride was an employee of Defendant Hospital and acted pursuant to her employment.

4. Defendant James Pletcher, D.O. (hereinafter "Defendant Pletcher"), is an individual who is a resident and citizen of the State of Missouri. At all relevant times, Defendant Pletcher was an employee of Defendant Hospital and acted pursuant to his employment.

5. Defendant Deanna Marquis (hereinafter "Defendant Marquis") is an individual who is a resident and citizen of the State of Oklahoma. At all relevant times, Defendant Marquis was an employee of Defendant Hospital and acted pursuant to her employment.

6. The events and omissions giving rise to Plaintiff's claims occurred in Jasper County, Missouri.

7. This Court's jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332, and 1391. The amount in controversy against the defendants in this case exceeds $75,000.00, exclusive of interest and costs.

## GENERAL AVERMENTS COMMON TO ALL C LAIMS

8. Plaintiff arrived in Joplin, Missouri on June 5, 2012 for the purpose of attending a business meeting the following day.

9. Plaintiff had separated from his wife and moved out of the marital home approximately two weeks prior to June 5, 2012.

10. Earlier in the day on June 5, 2012, before Plaintiff's arrival in Joplin, Plaintiff had a phone conversation with his estranged wife in which she and Plaintiff had a disagreement, and after which, Plaintiff's estranged wife became angry with him.

11. Following the conversation with his estranged wife, Plaintiff set out from Johnson County, Kansas, to Joplin, Missouri, for the purpose of attending his business meeting the following day.

12. Upon his arrival in Joplin, Plaintiff checked into a hotel room at the Hampton Inn Hotel located at 3107 E. 36th St., Joplin, Missouri.

13. After checking into his hotel room, Plaintiff went across the street to an Outback Steakhouse to pick up dinner for himself and then returned to his hotel room to eat.

14. Upon returning to his hotel room, Plaintiff had another short phone conversation with his estranged wife.

15. During this phone conversation, Plaintiff and his estranged wife had another argument and Plaintiff's estranged wife became angry with him again.

16. Plaintiff got off the phone with his estranged wife and began eating his dinner and watching television.

17. Upon information and belief, after getting off the phone with Plaintiff, Plaintiff's estranged wife called the front desk clerk at the Hampton Inn and stated that Plaintiff might be suicidal.

18. Upon information and belief, after receiving the call from Plaintiff's estranged wife, the front desk clerk at the Hampton Inn placed a 911 phone call to report her conversation with Plaintiff's estranged wife.

19. Approximately thirty minutes after getting off the phone with his estranged wife, Plaintiff received a knock on his hotel room door.

20. Plaintiff got up and looked through the peep hole in the door, but found that it was being covered from the outside. He opened the door a crack to see who was outside.

21. Before Plaintiff could determine who was outside his door, it was was pushed open upon him. Plaintiff was knocked backward, and officers of the Joplin Police Department forced their way into Plaintiff's hotel room.

22. Upon arriving at the Hampton Inn, the police officers had made contact with the front desk clerk who gave them Plaintiff's estranged wife's telephone number.

23. Prior to going to Plaintiff's hotel room, the police officers telephoned Plaintiff's estranged wife, and upon information and belief, claim that they were informed by her that she had spoken to Plaintiff on the phone earlier and that Plaintiff had informed her that he was suicidal, was drinking alcohol, and had ingested prescription pills.

24. Plaintiff never told his estranged wife that he was suicidal, never told her that he had been drinking alcohol, and never told her that he had taken prescription pills.

25. The police officers searched Plaintiff's room and did not find any alcohol, pills or any other evidence to corroborate the allegation that Plaintiff was a danger to himself.

26. Plaintiff attempted to explain to the police officers that he had recently separated from his wife and that she was claiming that he was suicidal because she was angry with him.

He further attempted to explain to the police officers that he was not suicidal and had not ingested alcohol or prescription pills.

27. Although they failed to find any corroborating evidence that Plaintiff was a danger to himself, the police officers determined they would detain Plaintiff and proceeded to deploy a taser against him.

28. After unlawfully tasering Plaintiff, the police officers informed him that he would be taken to the hospital for a 96 hour mental health evaluation even though they did not find any drugs, alcohol or any other evidence to corroborate Plaintiff's estranged wife's claim that he was suicidal.

29. Upon arriving at the emergency room of Freeman Hospital, the police officer that transported Plaintiff conferred with employees of Defendant hospital.

30. The police officer informed the employees of Defendant Hospital that he had not found any alcohol, pills or other evidence that Plaintiff was a danger to himself, but that Plaintiff's estranged wife had made statements that he was suicidal, and that Plaintiff had been tasered and charged with resisting arrest.

31. Defendant McBride was an emergency room physician working at the time that Plaintiff was brought into Freeman Hospital.

32. In the emergency room, Defendant McBride briefly entered the room where Plaintiff was being held and asked "what's your problem."

33. Plaintiff informed her that he had no problem and was being wrongfully held.

34. Defendant McBride stated that she was busy and turned around and left the room.

35. Defendant McBride did say anything else to Plaintiff and did not examine him to determine whether he was a danger to himself or others.

36. Despite never having examined Plaintiff, Defendant McBride permitted him to be admitted to Defendant Hospital for an involuntary mental health hold and later permitted him to be transferred to Defendant Hospital's mental health unit.

37. Although there was no independent evidence that Plaintiff was a danger to himself or others, the employees of Defendant Hospital admitted Plaintiff to Defendant Hospital and committed him for a 96 hour mental health hold.

38. Upon being admitted to Defendant Hospital, Plaintiff repeatedly requested that he be evaluated by a licensed mental health professional and that he be allowed to speak to an attorney.

39. Despite requests, Plaintiff was not initially allowed to speak to an attorney or a licensed mental health professional.

40. After approximately 6 hours of being held in Defendant Hospital's emergency room, Plaintiff was informed that if he agreed to be transferred to Defendant Hospital's mental health unit, he would be immediately evaluated by a licensed mental health professional and released.

41. Plaintiff agreed to be transferred to Defendant Hospital's mental health unit upon the promise that he would immediately be evaluated by a licensed mental health professional and released.

42. After his arrival in the mental health unit of Defendant Hospital, Plaintiff was examined by Defendant Pletcher.

43. Despite their being no independent evidence that Plaintiff was a danger to himself or others, Defendant Pletcher ordered that Plaintiff continue to be detained in the mental health unit.

44. Defendant Pletcher, after a minimal examination, diagnosed Plaintiff as being Bipolar Type I and prescribed the drug Trileptal for him.

45. Defendant Pletcher failed to explain to Plaintiff what Trileptal was and what its effect and possible complications could be prior to ordering that it be administered to him.

46. The Trileptal, along with other medications, was administered to Plaintiff by Defendant Marquis and other employees of Defendant Hospital.

47. Plaintiff asked what medications he was being asked to take and stated that he did not want to take them.

48. Defendant Marquis, and other employees of Defendant Hospital, coerced Plaintiff into taking the Trileptal, and other medications, without explaining what the medications were or what their intended effects were to be.

49. Defendant Marquis, and other employees of Defendant Hospital, told Plaintiff that if he did not willingly take the medications that he would be forced to do so and it would be noted that he was being uncooperative and his hold in the mental health unit would be lengthened.

50. Plaintiff repeatedly told every staff member at Defendant Hospital with whom he interacted that he was not a danger to himself and that his commitment in the hospital was a mistake.

51. Defendant repeatedly told every staff member of Defendant Hospital with whom he interacted that he wished to be released from the hospital.

52. Despite Plaintiff's repeated pleas, Plaintiff was held against his will in Defendant Hospital's mental health unit for approximately 30 hours before a full mental health evaluation was conducted by a licensed mental health professional.

53. Upon a complete evaluation by a licensed mental health professional, it was quickly determined that Plaintiff was not a danger to himself, as he had been stating the entire time during his commitment.

54. Upon a complete evaluation by a licensed mental health professional, Plaintiff was finally released from Defendant Hospital after being held against his will for approximately 36 hours.

<b><u>COUNT I--- MEDICAL NEGLIGENCE COMMITTED BY DEFENDANT<br>MCBRIDE</u></b>

55. Plaintiff incorporates each and every allegation contained in paragraphs 1-54 above as if fully set forth herein.

56. A physician patient-relationship existed between Plaintiff and Defendant McBride.

57. At all relevant times, Defendant McBride was an employee of Defendant Hospital and was contractually obligated to examine Plaintiff and provide necessary assistance in Plaintiff's diagnosis and treatment upon his arrival in Defendant Hospital's emergency room.

58. Defendant McBride was present in the emergency room while Plaintiff was held there and while she briefly spoke to Plaintiff and was informed that he was being wrongfully held, she failed and refused to conduct an examination of him to determine whether he was a danger to himself or others.

59. Defendant McBride permitted Plaintiff to be involuntarily committed at Defendant Hospital and permitted him to be transferred to the mental health unit without examining him to determine whether he was a danger to himself or others.

60. Defendant McBride owed to Plaintiff a duty to exercise the degree of skill and care ordinarily used under the same or similar circumstances by reasonably careful and prudent members of her profession in the decision to allow Plaintiff to be involuntarily committed and transferred to the mental health unit.

61. Defendant McBride had a duty to examine Plaintiff in the emergency room prior to permitting him to be admitted to Defendant Hospital and transferred to the mental health unit.

62. Defendant McBride negligently breached her duty to Plaintiff and deviated from the necessary standard of medical care by failing to examine him in the emergency room prior to permitting him to be admitted to the hospital and transferred to the mental health unit.

63. The negligent actions and omissions of Dr. McBride were taken in bad faith or arose to the level of gross negligence and demonstrated a conscious indifference to her professional duty.

64. The negligent actions and omissions by Defendant McBride displayed a complete indifference and conscious disregard for Plaintiff's rights, and were performed willfully, wantonly or maliciously such that Plaintiff is entitled to an award of punitive damages.

65. As a direct and proximate result of Defendant McBride's negligence, Plaintiff was wrongfully admitted into the hospital against his will and committed to Defendant Hospital's mental health unit for a 96 hour mental health hold.

66. As a direct and proximate result of Defendant McBride's negligence, Plaintiff suffered damages in the following ways, including, but not limited to:

    a. Past, present, and future pain and suffering, mental anguish and loss of enjoyment of life, embarrassment and humiliation;

b.  Medical and hospital expenses related to Plaintiff's unlawful commitment in Defendant's emergency room and mental health unit.

WHEREFORE, based on the foregoing, as to Count I of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendant McBride for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendant and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II--- MEDICAL NEGLIGENCE COMMITTED BY DEFENDANT PLETCHER

67. Plaintiff incorporates each and every allegation contained in paragraphs 1-66 above as if fully set forth herein.

68. A physician patient-relationship existed between Plaintiff and Defendant Pletcher.

69. Defendant Pletcher owed to Plaintiff a duty to exercise the degree of skill and care ordinarily used under the same or similar circumstances by reasonably careful and prudent members of his profession in his decision to continue to detain Plaintiff and in the care and treatment rendered to Plaintiff while he was detained.

70. Defendant Pletcher negligently breached his duty to Plaintiff and deviated from the necessary standard of medical care in the following ways, including, but not limited to:

a.  Defendant Pletcher failed to release Plaintiff from his involuntary commitment immediately upon examining him despite the fact that the medical evidence did not support continuing to detain him.

b. Defendant Pletcher misdiagnosed Plaintiff as Bipolar Type I despite the absence of medical evidence to support such diagnosis.

c. Defendant Pletcher wrongfully prescribed Trileptol to Plaintiff against his will in the absence of medical evidence to support the necessity of such prescription.

d. Defendant Pletcher failed to explain to Plaintiff what Trileptal was and what its effect and possible complications could be prior to ordering that it be administered to him, and therefore, failed to obtain Plaintiff's informed consent prior to ordering that the Trileptal be administered.

71. The negligent actions and omissions of Dr. Pletcher arose to the level of gross negligence and demonstrated a conscious indifference to his professional duty.

72. The negligent actions and omissions by Defendant Pletcher, performed within the course and scope of his employment with Defendant Hospital, displayed a complete indifference and conscious disregard for Plaintiff's rights, and were performed willfully, wantonly or maliciously such that Plaintiff is entitled to an award of punitive damages.

73. As a direct and proximate result of Defendant Pletcher's negligence, Plaintiff suffered damages in the following ways, including, but not limited to:

a. Past, present, and future pain and suffering, mental anguish and loss of enjoyment of life, embarrassment and humiliation;

b. Medical and hospital expenses related to Plaintiff's unlawful commitment in Defendant's emergency room and mental health unit.

WHEREFORE, based on the foregoing, as to Count II of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendant Pletcher for damages in an

amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendant and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT III--- ASSAULT AND BATTERY -DEFENDANT MARQUIS AND DEFENDANT HOSPITAL

74. Plaintiff incorporates each and every allegation contained in paragraphs 1-73 above as if specifically set forth herein.

75. Defendant Marquis and other employees of Defendant Hospital repeatedly coerced Plaintiff to take medications against his will by stating that if he refused, he would be forced to take them, be deemed non-compliant and his illegal detainment would be lengthened.

76. Defendant Marquis' actions, and those of the other employees of Defendant Hospital, were intended to and did place Plaintiff in apprehension of bodily harm and offensive bodily contact.

77. By repeatedly coercing Plaintiff into taking medications against his will, without explaining to him what the medications were, or what their intended effects were to be, Defendant Marquis and other employees of Defendant Hospital engaged in an intentional, offensive bodily contact against him.

78. The actions of Defendant Marquis, and the other employees of Defendant Hospital, were taken in the course and scope of their employment by Defendant Hospital and occurred on the premises of Defendant Hospital during the work hours of Defendant Marquis

and other employees and were in furtherance of Defendant Hospital's purposes with regard to Plaintiff.

79. The actions taken by Defendants Marquis, other hospital employees, and Defendant Hospital, through its employees, who were acting within the course and scope of their employment, displayed a complete indifference and conscious disregard for Plaintiff's rights and were performed willfully, wantonly and maliciously such that Plaintiff is entitled to an award of punitive damages.

80. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages in the following ways, including, but not limited to:

   a. Past, present, and future pain and suffering, mental anguish and loss of enjoyment of life;

   b. Medical and hospital expenses related to Plaintiff's unlawful commitment in Defendant's emergency room and mental health unit.

WHEREFORE, based on the foregoing, as to Count III of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendant Marquis and Defendant Hospital for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## **COUNT IV--- NEGLIGENCE COMMITTED BY DEFENDANT MARQUIS**

81. Plaintiff incorporates each and every allegation contained in paragraphs 1-80 above as if specifically set forth herein.

82. Prior to administering Trileptal and other medicatons to Plaintiff, Defendant Marquis and other employees of Defendant Hospital failed and refused to explain to Plaintiff what medications they were giving him, failed to explain what the effects of the medications would be and failed to explain any possible complications.

83. Defendant Marquis and other employees of Defendant Hospital had a duty to Plaintiff to obtain his informed consent prior to administering Trileptal and other medications to him.

84. Defendant Marquis and other employees of Defendant Hospital negligently failed to obtain Plaintiff's informed consent prior to administering Trileptal and other medications to him.

85. The actions of Defendant Marquis, and the other employees of Defendant Hospital, were taken in the course and scope of their employment by Defendant Hospital and in furtherance of Defendant Hospital's purposes with regard to Plaintiff.

86. The actions of Defendant Marquis, and other employees of Defendant Hospital, displayed a complete indifference and conscious disregard for Plaintiff's rights, and were performed willfully, wantonly or maliciously such that Plaintiff is entitled to an award of punitive damages.

87. As a direct and proximate result of said negligence, Plaintiff suffered damages in the following ways, including, but not limited to:

   a. Past, present, and future pain and suffering, mental anguish and loss of enjoyment of life;

   b. Medical and hospital expenses related to Plaintiff's unlawful commitment in Defendant's emergency room and mental health unit.

WHEREFORE, based on the foregoing, as to Count IV of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendant Marquis for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendant and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## **COUNT V--- NEGLIGENCE COMMITTED BY DEFENDANT HOSPITAL**

88. Plaintiff incorporates each and every allegation contained in paragraphs 1-87 above as if specifically set forth herein.

89. Defendant Hospital, through its employees, had a duty to Plaintiff to ensure that he was not committed and held against his will without cause to believe that he was a danger to himself or others and a duty to use the degree of skill and care ordinarily used under the same or similar circumstances by reasonably careful and prudent health care providers in involuntarily committing Plaintiff and in rendering him medical care.

90. At all relevant times, Defendant McBride, Defendant Pletcher, Defendant Marquis and other employees of Defendant Hospital acted in the course and scope of their employment by Defendant Hospital and in furtherance of Defendant Hospital's purposes with regard to Plaintiff.

91. Defendant Hospital, through its employees, breached its duty to Plaintiff in one or more of the following ways, including, but not limited to:

   a. Defendant McBride negligently breached her duty to Plaintiff and deviated from the necessary standard of medical care by failing and refusing to examine him in

the emergency room prior to permitting him to be admitted to the hospital and transferred to the mental health unit;

b. Defendant Pletcher failed to release Plaintiff from his involuntary commitment immediately upon examining him despite the fact that the medical evidence did not support continuing to detain him;

c. Defendant Pletcher misdiagnosed Plaintiff as Bipolar Type I in the absence of medical evidence to support such diagnosis;

d. Defendant Pletcher wrongfully prescribed Trileptol to Plaintiff against his will in the absence of medical evidence to support the necessity of such prescription;

e. Defendant Pletcher failed to explain to Plaintiff what Trileptal was and what its effect and possible complications could be prior to ordering that it be administered to him, and therefore, failed to obtain Plaintiff's informed consent prior to ordering that the Trileptal be administered;

f. Defendant Marquis and other employees of Defendant Hospital negligently failed to obtain Plaintiff's informed consent prior to administering Trileptal and other medications to him.

92. The negligent actions and omissions by Defendant Hospital, taken by and through its employees who were acting within the course and scope of their employment with Defendant Hospital, displayed a complete indifference and conscious disregard for Plaintiff's rights and were malicious, willful or wanton such that Plaintiff is entitled to an award of punitive damages.

93. As a direct and proximate result of Defendant Hospital's negligence, Plaintiff suffered damages in the following ways, including, but not limited to:

a. Past, present, and future pain and suffering, mental anguish and loss of enjoyment of life, embarrassment and humiliation;

b. Medical and hospital expenses related to Plaintiff's unlawful commitment in Defendant's emergency room and mental health unit.

WHEREFORE, based on the foregoing, as to Count V of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendant Hospital for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VI--- FALSE IMPRISONMENT BY DEFENDANTS HOSPITAL, MCBRIDE AND PLETCHER

94. Plaintiff incorporates each and every allegation contained in paragraphs 1-93 above as if specifically set forth herein.

95. Defendant Hospital, through its employees who were acting within the course and scope of their employment, and Defendants McBride and Pletcher detained and held Plaintiff in the hospital for over 36 hours against his will despite his repeated assertions that his detainment was a mistake and despite the lack any independent evidence that he was a danger to himself or others.

96. Defendant Hospital's actions, taken through its employees who were acting within the course and scope of their employment with Defendant Hospital, and the actions of

Defendants McBride and Pletcher were unlawful in that there was no reason to believe that Plaintiff was a danger to himself or others.

97. The actions taken by Defendant Hospital, through its employees, and the actions of Defendants McBride and Pletcher were taken in bad faith and demonstrated a conscious indifference to professional duties.

98. The actions taken by Defendant Hospital, and the actions of Defendants McBride and Pletcher displayed a complete indifference and conscious disregard for Plaintiff's rights, and were performed willfully, wantonly or maliciously such that Plaintiff is entitled to an award of punitive damages.

99. As a direct and proximate result of Defendant Hospital's, Defendant McBride's and Defendant Pletcher's false imprisonment of Plaintiff, Plaintiff suffered damages in the following ways, including, but not limited to:

    a. Past, present, and future pain and suffering, mental anguish and loss of enjoyment of life, embarrassment and humiliation;

    b. Medical and hospital expenses related to Plaintiff's unlawful commitment in Defendant's emergency room and mental health unit.

WHEREFORE, based on the foregoing, as to Count VI of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendants for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby requests a jury trial.

       Respectfully submitted,

       BAIRD, LIGHTNER, MILLSAP, P.C.

BY:    /s/ *Philip R. Quinn*
       Philip R. Quinn    Mo. Bar No. 63180
       1901-C South Ventura
       Springfield, Missouri 65804
       pquinn@blmlawyers.com
       Telephone: (417) 887-0133
       Fax: (417) 887-8740